UNITED STATES of America,
Plaintiff–Appellee,

v.

**Raul Alexander SANCHEZ,
Defendant–Appellant.**

No. 91–30250.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1992.

Decided June 24, 1992.

James D. Lang, Ransom, Blackman & Weil, Portland, Or., for defendant-appellant.

---

Leslie K. Baker, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before: WALLACE, Chief Judge, GOODWIN, Circuit Judge, and M.D. CROCKER,* District Judge.

WALLACE, Chief Judge:

Sanchez appeals from his sentence for distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He argues that the district court erred by sentencing him for transactions involving other distributions of heroin because: (1) they fail to qualify as relevant conduct under the Sentencing Guidelines; and (2) even if they do, the resulting enhancement is so extreme as to require a higher standard of proof than the district court used. The district court had jurisdiction pursuant to 18 U.S.C. § 3231 and 21 U.S.C. § 841(a)(1). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

In February 1990, law enforcement officials in Multnomah County, Oregon, began investigating a suspected drug distribution organization. In July 1990, an undercover officer bought heroin in two separate purchases from Julio Cesar Segovia–Sanchez (Segovia), who was accompanied by his brother, Sanchez. On both occasions, Sanchez drove Segovia to the place of the transaction. On November 7, 1990, another undercover officer bought heroin from Segovia, who then immediately met with an individual whose description matched that of Sanchez.

Within a month, an undercover officer met with Segovia to negotiate the purchase of heroin that was to take place on December

* Honorable M.D. Crocker, United States District Judge, Eastern District of California, sitting by

ber 5, 1990. At the conclusion of the meeting, Segovia was picked up by Sanchez. Sanchez's car was registered to an individual who had been arrested some months earlier for distributing heroin for Segovia. On December 5, Segovia and a juvenile male met with the officer. Segovia advised the officer that the juvenile would deliver the heroin to him in about 25 minutes. Soon after Segovia and the juvenile left, the juvenile returned with the heroin. Sometime thereafter, Sanchez was arrested.

Sanchez pleaded guilty to distributing heroin in one of the July transactions. At sentencing, the district court enhanced his sentence for the other heroin transaction that took place in July, and for the distributions of heroin on November 7 and December 5. This raised his offense level from 12 to 26, and his sentencing range from 10 to 16 months to 63 to 78 months. United States Sentencing Commission, *Guidelines Manual* (Sentencing Guidelines), § 2D1.1(c)(9) & (16) (Nov.1990) (Drug Quantity Table). However, the district court reduced his offense level for acceptance of responsibility and minimal participation, lowering his offense level to 20 and his sentencing range to 33 to 41 months. Sanchez was sentenced to 33 months' confinement.

II

■ Sanchez argues that the sentencing court erred by sentencing him for amounts of heroin involved in the November 7 and December 5 transactions as relevant conduct under Sentencing Guidelines § 1B1.3. We review the district court's legal interpretation of the Sentencing Guidelines de novo, and its factual determinations for clear error. *United States v. Wilson*, 900 F.2d 1350, 1355 (9th Cir.1990).

Section 1B1.3 directs the sentencing court to determine the base offense level

designation.

for drug crimes on the basis of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Sentencing Guidelines § 1B1.3(a)(2). In order for section 1B1.3(a)(2) to operate, the government must prove by a preponderance of the evidence that the defendant either: (1) personally participated in the acts and omissions, or (2) the acts and omissions were "in furtherance of the execution of [ ] jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." *Id.* § 1B1.3(a)(2) & comment. (nn.1, 2).

As outlined above, the government presented substantial evidence connecting Sanchez to the quantities of heroin seized on November 7 and December 5. This evidence is much more substantial than the evidence in the one case cited by Sanchez that did not attribute certain drugs to the defendant. *See United States v. Townley,* 929 F.2d 365, 370–72 (8th Cir.1991) (*Townley*) (for one quantity of drugs: hearsay allegations of confidential informant, defendant's use of drug storage containers similar to those used for the quantity of drugs, and other unsubstantial evidence; for a second quantity of drugs: defendant's arrival at bus station wearing a pager and a medallion to pick up certain arriving passengers, who wore similar medallions and carried a picture of defendant, and the quantity of drugs for defendant's half-brother, and other unsubstantial evidence).

The district court did not clearly err in determining that the government proved by a preponderance of the evidence that Sanchez was part of a joint venture to distribute drugs. The district court also did not commit clear error by determining that the drug transactions on November 7 and December 5 were in furtherance of the joint venture and reasonably foreseeable to Sanchez. Therefore, the district court did not err by including these amounts in the sentencing of Sanchez.

### III

Sanchez further argues that even if the distributions of heroin on November 7

and December 5 are relevant conduct under the Sentencing Guidelines, the district court still committed an error in sentencing. Sanchez concedes that enhancements ordinarily may be imposed using only a preponderance of the evidence standard of proof, but contends that the enhancement for relevant conduct in this case is so disproportionate to his sentence for the offense of conviction that due process requires that the government satisfy a higher standard of proof. We review the constitutionality of the application of the Sentencing Guidelines de novo. *See United States v. Brady,* 895 F.2d 538, 539 (9th Cir.1990).

In *United States v. Restrepo,* 946 F.2d 654 (9th Cir.1991) (en banc) (*Restrepo II*), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992), we determined that use of the preponderance of the evidence standard in sentencing proceedings generally satisfies due process. *Id.* at 656–57. *Restrepo II* explained that a "convicted defendant has an interest in the accurate application of the Guidelines within statutory limits, nothing more, nothing less." *Id.* at 659. As we explained above in part II, the district court correctly applied the Guidelines by determining that the distributions of heroin on November 7 and December 5 were relevant conduct for purposes of Sanchez's sentence. In addition, this enhancement did not result in Sanchez receiving a sentence in excess of the statutory maximum for his offense of conviction. *See* 21 U.S.C. § 841(b)(1)(C). Therefore, Sanchez's enhancement complies with *Restrepo II*'s mandate.

*Restrepo II* touched upon whether due process would be satisfied where a "sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." 946 F.2d at 659. Restrepo received a sentencing enhancement for drug distributions that were not involved in the offense of conviction that raised his offense level from 14 to 18 and potentially increased his sentence by 12 to 20 months. *Id.* at 661. *Restrepo II*

stated that this enhancement was not so extreme as to violate due process. *Id.* However, we explained in dicta that certain Supreme Court and out-of-circuit cases discussed how a sentencing enhancement might violate due process, citing *McMillan v. Pennsylvania,* 477 U.S. 79, 87–91, 106 S.Ct. 2411, 2416–18, 91 L.Ed.2d 67 (1986) *(McMillan); Mullaney v. Wilbur,* 421 U.S. 684, 698–700, 703–04, 95 S.Ct. 1881, 1889–90, 1892, 44 L.Ed.2d 508 (1975); *Specht v. Patterson,* 386 U.S. 605, 608–10, 87 S.Ct. 1209, 1211–12, 18 L.Ed.2d 326 (1967); *Townley,* 929 F.2d at 370; and *United States v. Kikumura,* 918 F.2d 1084, 1101–02 (3d Cir.1990). *See Restrepo II,* 946 F.2d at 656 n. 1, 659–61.

Sanchez relies on some of these cases to argue that the sentencing court was required to use more than a preponderance of the evidence standard. However, none of these help him. *McMillan* concerned the constitutional validity of a Pennsylvania statute that required the sentencing judge to impose a minimum sentence of five years on the defendant if the sentencing judge found by a preponderance of the evidence that the convicted defendant "visibly possessed a firearm" while committing a certain type of felony. 477 U.S. at 81, 106 S.Ct. at 2412 (internal quotation marks omitted). The Court rejected the defendant's contention that due process required either that visible possession be treated as an element of the crime or that it be proven in the sentencing phase by something more than mere preponderance of the evidence. *Id.* at 91, 106 S.Ct. at 2418. By way of dicta, we have read *McMillan* as recognizing that "there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *Restrepo II,* 946 F.2d at 659. There may be some doubt as to what the Court had in mind in *McMillan.* The Court seems to discourage the use of any standard other than preponderance of the evidence. *See McMillan,* 477 U.S. at 91–93, 106 S.Ct. at 2418–20.

[S]entencing courts have always operated without constitutionally imposed burdens of proof; embracing petitioners' suggestion that we apply the clear-and-convincing standard here would significantly alter criminal sentencing, for we see no way to distinguish the visible possession finding at issue here from a host of other express or implied findings sentencing judges typically make on the way to passing sentence.

*Id.* at 92 n. 8, 106 S.Ct. at 2419 n. 8. There is no principled distinction between the district court's findings as to relevant conduct that Sanchez now protests and the other findings at sentencing that result in some lesser enhancement.

*Mullaney* and *Specht* are also distinguishable. *Mullaney* concerned the burden of proof at trial not sentencing. *See* 421 U.S. at 691–92, 95 S.Ct. at 1886. The defendant in *Specht* faced a sentence that exceeded the one provided by the statute under which he was convicted. *See* 386 U.S. at 607, 87 S.Ct. at 1211.

Sanchez cites two out-of-circuit post-Sentencing Guidelines cases that have explored what type of a sentencing increase would require a higher standard of proof, *Kikumura* and *Townley,* but neither of these cases changes the result here. *Kikumura* held that a departure that increased the length of the sentence twelve-fold, from 30 months to 30 years, and was the equivalent of a 22 level increase in the offense level was so disproportionate as to require a clear and convincing standard of proof. *See* 918 F.2d at 1100–02. However, the court reached only the statutory requirement of 18 U.S.C. § 3553(b), not the due process clause. *See* 918 F.2d at 1102. The court reasoned that "the clear and convincing standard is, under these circumstances, implicit in [section 3553(b)'s] requirement that a sentencing court 'find' certain considerations in order to justify departure." *Id.* Because this reasoning applies only to sentencing departures, and not sentencing enhancements, it is inapplicable here.

The other post-Sentencing Guidelines case cited by Sanchez stated that an 18

level enhancement, which increased the permissible sentencing range seven-fold, "conceivably could" require a higher standard of proof than just preponderance of the evidence. *Townley,* 929 F.2d at 369. In support of this speculation, the court relied on *McMillan* and *Kikumura. See id.* at 369–70. However, as we explained above, *McMillan* offers doubtful support for this proposition, and *Kikumura* is inapposite. In addition, because *Townley* applied a preponderance of the evidence standard anyway, *see id.* at 370, its discussion of a higher burden of proof is dicta, which we choose not to follow.

The sentencing enhancement Sanchez received for relevant conduct was not so extreme as to require a higher standard of proof than preponderance of the evidence. Therefore, the district court did not err by finding that conduct relevant under the Sentencing Guidelines using this standard of proof. We do not address whether a sentencing enhancement may be so extreme as to require that it be considered as an element of the offense, because Sanchez does not raise such a claim. *See McMillan,* 477 U.S. at 87–88, 106 S.Ct. at 2416–17.

AFFIRMED.