56 F.3d 74
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee
v.
Carlos HUERTA, Defendant-Appellant.
 No. 94-30055.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 2, 1995.*
Decided June 1, 1995.
 
 Before: SKOPIL, BOOCHEVER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Carlos Huerta (Huerta) appeals his jury conviction and sentence under the Sentencing Guidelines for conspiracy to distribute cocaine and marijuana (21 U.S.C. Secs. 846 and 841(a)(1)) and distribution of cocaine (21 U.S.C. Sec. 841(a)(1)). He first contends the district court abused its discretion in admitting, without a proper foundation, tape recorded conversations between the charged coconspirators and their customers. Second, he contends the district court erred by admitting a cocaine exhibit into evidence without requiring proof of the complete chain of custody. Third, he contends the district court abused its discretion by excluding evidence that he remained in custody from the time of his arrest through and including trial. Fourth, he contends the district court erred by calculating his base offense level at 32, because the court erroneously considered evidence of his codefendants' conduct which was not reasonably foreseeable by him and erred in approximating the amount of drugs attributable to the conspiracy. We affirm.
 
 FACTS
 
 3
 In April 1993, Huerta was indicted and charged in Count I with conspiring to distribute cocaine and marijuana, along with Jaime Huerta, Fidel Perez, Jorge Huerta and Grant Coombs from an unknown date, but at least between January 1992 and April 15, 1993. In Count 3, he was charged with distributing cocaine to a confidential informant on April 30, 1992. In Counts 4 and 5, he was charged with distributing cocaine. In Count 8, he, along with Grant Coombs, was charged with using a telephone to facilitate narcotics trafficking.
 
 
 4
 A jury convicted Huerta on Counts 1, 3, 4 and 5. Count 8 was dismissed. Huerta was sentenced to 168 months imprisonment, five years supervised release, a $3,000 fine, and a $200 special assessment. This appeal followed.
 
 DISCUSSION
 A. Statements of Coconspirators
 
 5
 Huerta contends the district court erred by admitting the statements of his coconspirators because the government failed to establish by a preponderance of the evidence that (1) a conspiracy existed between him and the declarants; (2) the statements were made both in furtherance of the conspiracy and during the course of the conspiracy. Fed. R. Evid. 801(d)(2)(E).
 
 
 6
 "We review for abuse of discretion the district court's decision to admit co-conspirator statements and for clear error the underlying factual determination that a conspiracy existed and that the statements were made in furtherance of that conspiracy." United States v. Arambula-Ruiz, 987 F.2d 599, 607 (9th Cir. 1993).
 
 
 7
 The evidence establishes the existence of a conspiracy among the indicted codefendants. Although they each worked independently, they also worked interdependently to sell drugs. Huerta, Jaime Huerta and Fidel Perez, roommates in the same apartment, and Jorge Huerta, their next-door neighbor, communicated orders for drugs, referred customers to each other, obtained drugs from each other for sale to others, and worked together to buy drugs.
 
 
 8
 Evidence apart from the coconspirators' statements sufficiently established Huerta's connection to the conspiracy. United States v. Silverman, 861 F.2d 571, 577 (9th Cir. 1988). For example, the government wiretap revealed calls in which Huerta sold drugs on behalf of others or relayed orders for drugs, referred customers, and negotiated for the delivery of drugs by his coconspirators to him for sale to others.
 
 
 9
 The statements of Huerta's coconspirators were clearly made during the course, and in furtherance of, the conspiracy.
 
 
 10
 In determining whether a statement is made "in furtherance" of a conspiracy, the court looks to the declarant's intent in making the statement, not the actual effect of the statement. It is not necessary that the statement be made to another member of the conspiracy for it to come under rule 801(d)(2)(E). To be "in furtherance" a statement must advance a common objective of the conspiracy or set in motion a transaction that is an integral part of the conspiracy.
 
 
 11
 United States v. Williams, 989 F.2d 1061, 1068 (9th Cir. 1993) (citations omitted).
 
 
 12
 Here, the common objective of selling drugs was "advanced" by the coconspirators' sales negotiations. Moreover, other statements furthered the conspiracy by keeping coconspirators informed about their customers and the supply of drugs. See United States v. Yarbrough, 852 F.2d 1522, 1527 (9th Cir.), cert. denied, 488 U.S. 866 (1988). The district court did not abuse its discretion by admitting into evidence the statements of Huerta's coconspirators.
 
 B. Admission of the Cocaine
 
 13
 Huerta challenges the admission of Exhibit 47, cocaine which he allegedly sold to an undercover informant, Denioso Barrios, on April 30, 1992. He contends the government failed to establish a chain of custody for the cocaine, as required by Fed. R. Evid. 901. We disagree.
 
 
 14
 A federal agent testified that Barrios notified him he had arranged to buy cocaine from Huerta. The agent and Barrios called Huerta to set up the transaction. Before buying the cocaine, the agent searched Barrios and his car. Agents followed Barrios to outside Huerta's apartment, where the transaction took place. Barrios returned to his car, and was followed by the agents as he drove nonstop to the agent's office. Barrios turned over the cocaine to the agent, the cocaine was field tested, and placed in an evidence locker. Expert testimony and analysis of the tape recording from the transaction established that Huerta delivered the cocaine to Barrios. The evidence was "sufficient to support a finding that the [cocaine was] what [the government] claim[ed]." Fed. R. Evid. 901.
 
 
 15
 Missing from this chain of evidence, according to Huerta, is Barrios's testimony. Both the government and the defense declined to call Barrios after he denied, outside the presence of the jury, that he worked as a government informant, and testified he bought the cocaine for his own use. Barrios's absence, however, is of no moment, because the government was not required to produce every person who ever had possession of the cocaine. United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied, 502 U.S. 854 (1991). "The possibility of a break in the chain of custody goes only to the weight of the evidence." Id. Huerta pointed out Barrios's absence to the jury, and argued that delivery was never made, an argument which the jury obviously rejected.
 
 
 16
 The district court did not abuse its discretion by admitting Exhibit 47, the cocaine, into evidence. Id.
 
 C. Evidence of Huerta's In-Custody Status
 
 17
 Huerta contends the district court erred by excluding evidence of his in-custody status. This evidence, he argues, would establish the government witnesses' bias. This contention is without merit. Whether Huerta remained in custody is irrelevant, because it has no tendency to make the existence of the government witnesses' bias more probable. Fed. R. Evid. 401. What was relevant, and brought up by Huerta at trial, was that the government witnesses were neither charged nor incarcerated for their participation in the conspiracy.
 
 
 18
 The district court did not abuse its discretion by excluding evidence of Huerta's custodial status.
 
 D. Sentencing
 
 19
 Huerta contends the court erred by setting his base offense level at 32, because the quantity of drugs attributed to him was not reasonably foreseeable, and the court erred in approximating the quantity of drugs involved in the conspiracy. See USSG Sec.1B1.3.
 
 
 20
 A district court's finding of the quantity of drugs reasonably foreseeable by a defendant is a finding of fact which we review for clear error. United States v. Sanchez, 967 F.2d 1383, 1385 (9th Cir. 1992). Here, the evidence established that Huerta lived with his primary coconspirators in the same apartment building, and in the same apartment with two of them. Huerta and the coconspirators assisted one another in consummating sales of illegal drugs. The district court did not clearly err in finding that the quantity of drugs sold by Huerta's coconspirators was reasonably foreseeable by him.
 
 
 21
 Apart from his foreseeability argument, Huerta disputes the district court's approximation of the amount of drugs attributed to the conspiracy. We understand Huerta's argument, but reject it.
 
 
 22
 "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level.... Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." USSG Sec.2D1.1, n.12.
 
 
 23
 The court reasonably approximated that over the 15 months of the conspiracy, the conspirators sold 1 pound of cocaine and 12 pounds of marijuana each month, based solely on the drugs sold to Monte Joe Brown, Grant Coombs, John McCauley, and Ben Tomchak and excluding drug sales transacted during the wiretaps. Converting the cocaine to marijuana, the court found that the conspiracy sold 1,442.44 kilograms of marijuana, well within offense level 32. The district court did not err in its approximation of the quantity of marijuana attributable to the conspiracy.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3