117 F.3d 1427
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee/Cross-Appellant,
v.
Scott Howard WALT, aka Michael Forester,
Defendant-Appellant, Cross-Appellee.
 Nos. 95-50328, 95-50329.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 10, 1996.
Submission deferred December 19, 1996.
Submitted June 26, 1997.
Decided July 1, 1997.
 
 Appeal from the United States District Court for the Southern District of California, Nos. CR-94-00159-HBT, CR-94-01159-1 HBT; Howard B. Turrentine, District Judge, Presiding.
 Before: FARRIS, BEEZER and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Scott Howard Walt appeals his narcotics conspiracy and aiding and abetting convictions on both constitutional and evidentiary grounds. He also appeals his sentence, which the government cross-appeals on other grounds.
 
 
 3
 We have jurisdiction under 28 U.S.C. § 1294(1) and 18 U.S.C. § 3742(a)-(b). We affirm Walt's conviction and sentence.
 
 
 4
 * Officers of the Drug Enforcement Agency ("DEA") arrested Walt for drug trafficking on October 4, 1994 in Encinitas, California. Walt headed a marijuana smuggling operation, which purchased marijuana in Mexico for distribution in the midwestern United States. The government arrested several suspects connected with Walt's operation and initiated prosecution in both California and Minnesota. These arrests were the culmination of an investigation headed by Agent Perry Bryant.
 
 
 5
 Walt was the only California defendant to stand trial. On March 13, 1995, a jury found Walt guilty of one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846, and two counts of aiding and abetting possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The jury also found certain property subject to forfeiture. Judge Turrentine sentenced Walt to 292 months incarceration.
 
 
 6
 Juergon Hans Thode, another California defendant, pled guilty to various charges, agreed to forfeit his interest in $104,080 seized by the government in a prior search and testified against Walt. Thode received a significant sentence reduction in return for his cooperation. Judge Keep sentenced Thode to 12 months imprisonment.
 
 
 7
 Of the Minnesota defendants only Robert Towey proceeded to trial. A jury convicted Towey in February, 1995, on possession and conspiracy charges. That jury also determined that $115,050 in cash was subject to forfeiture. The government seized the $115,050 from Mail Box, Inc. in Maple Grove, Minnesota on June 9, 1994, after Thode had attempted to mail the cash, allegedly drug proceeds, to Walt in California. The DEA had initiated administrative forfeiture proceedings against the $115,050 in November, 1994, and notified Walt of these proceedings. Walt filed a claim for the cash. The DEA notified Walt that his claim was defective, but Walt never filed a corrected claim. Ultimately, the DEA terminated its proceedings in light of the Minnesota indictment.
 
 II
 
 8
 Walt first argues that the district court erred in failing to dismiss his indictment on double jeopardy grounds; we review such claims de novo. See United States v. Chick, 61 F.3d 682, 686 (9th Cir.1995), cert. denied, 116 S.Ct. 1416 (1996).
 
 
 9
 The Double Jeopardy Clause of the Fifth Amendment prohibits: " a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). The bar against a second punishment or prosecution arises only after jeopardy has attached in the first action. See Serfass v. United States, 420 U.S. 377, 389 (1975).
 
 
 10
 Walt claims that he was twice punished for the same offense, first by the government's forfeiture actions against the seized $104,080 and the $115,050 cash, and second by his sentence of incarceration. We disagree. Walt was never "twice put in jeopardy." U.S. Const. Amend. V. Jeopardy attached in Walt's criminal trial; he was tried and convicted on three criminal counts. This was the first and only jeopardy that has attached in this matter, however. Jeopardy for Walt's interest in the seized cash has not attached; jeopardy does not attach simply when property is seized. See United States v. Washington, 69 F.3d 401, 403 (9th Cir.1995). Generally, jeopardy does not attach until some risk of guilt or an adverse determination arises. See Serfass, 420 U.S. at 388, 391-92. Walt has not been prosecuted or punished in any way for the cash seizures.
 
 
 11
 Walt's interest in the cash was not at issue in any of the proceedings of his co-defendants, as he contends. Title 21 U.S.C. § 853(k) bars third party intervention "in a trial or appeal of a criminal case involving the forfeiture of [ ] property".[1] To date, the government has not published the required 21 U.S.C. § 853(n) notice of forfeiture and there have been no ancillary proceedings as to the seized cash. The government's failure to do so does not convert Towey's and Thode's sentencings into a final adjudication of Walt's interest in the seized cash. Any double jeopardy issues arising from future proceedings must necessarily be addressed at that time.
 
 III
 
 12
 Walt argues that Agent Bryant's testimony violated his rights under the Confrontation Clause because Bryant's testimony continually referred to the observations of other surveillance agents who were not available for cross-examination. We review challenges under the Confrontation Clause de novo, United States v. Conteras, 63 F.3d 852, 857 (9th Cir.1995), and apply harmless error analysis, United States v. Bernard S., 795 F.2d 749, 756 (9th Cir.1986). Walt's failure to specifically state that his objection to Bryant's testimony was based on Confrontation Clause grounds does not alter our standard of review. The objection by Walt's attorney, although not directly citing the Confrontation Clause as the basis for his objection, sufficed to preserve his objection.
 
 
 13
 The Confrontation Clause provides that a criminal defendant shall have the right "to be confronted with the witnesses against him." U.S. Const., Amend. VI. Bryant's testimony did not violate the Confrontation Clause; he testified himself and was available for cross-examination. Bryant was well informed about the various surveillance operations through his own observations and review of the evidence.
 
 
 14
 Walt identifies only one surveillance operation that Bryant missed, the surveillance conducted on August 31, 1994. As to that operation, Bryant reviewed both videotape and photographic evidence from the surveillance and his testimony can be said to derive from that review. Bryant did note that other agents could also testify about these matters, several of whom did.
 
 
 15
 Walt's contention that Bryant was merely reading from his reports throughout his testimony is meritless. No objection to this effect was made at trial and nothing in the record supports this contention.
 
 
 16
 Even if portions of Bryant's testimony violated the Confrontation Clause, the admission of this testimony constitutes harmless error. In determining whether an error is harmless, we consider: "(1) the importance of the evidence to the prosecution's case; (2) whether the evidence was cumulative; (3) the presence of corroborating evidence; (4) the overall strength of the prosecution's case." See Bernard S., 795 F.2d at 756 (citing Delaware v. Van Arsdall, 475 U.S. 673 (1986)). Bryant's testimony was substantiated by other agents, and the government's other evidence included Thode's testimony as well as the pen register and phone records.
 
 IV
 
 17
 We review the district court's evidentiary rulings for abuse of discretion, United States v. Miller, 771 F.2d 1219, 1237 (9th Cir.1985) (business records exception); United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir.1988) (admission of charts to jury room); United States v. Slaughter, 891 F.2d 691, 697 (9th Cir.1989) (testimony), and apply harmless error analysis, Burgess v. Premier Corp., 727 F.2d 826, 833, 835-36 (9th Cir.1984).
 
 A. Bryant's Testimony
 
 18
 Walt argues that Bryant's testimony violated Federal Rules of Evidence 602 and 803(6). We disagree.
 
 
 19
 Rule 602 requires that a witness have personal knowledge of the matters to which he is testifying.[2] Walt argues that Bryant violated Rule 602 by testifying about issues of which he had no personal knowledge. Bryant, the lead agent on the Walt investigation, was intimately aware of the facts of this case. He participated in various surveillance operations and reviewed the efforts of his subordinates, as well as other evidence gathered. Bryant's testimony satisfied Rule 602. Even if the district court erred in admitting this testimony, any error would be harmless in light of the government's other evidence.
 
 
 20
 Walt next contends that Bryant violated Federal Rule of Evidence 803(6), the business records exception, by reading his reports into evidence.[3] We disagree. As noted above, the record does not reflect that Bryant read any reports into evidence.
 
 B. Exhibits 66 and 80
 
 21
 Walt argues that the government failed to lay a proper foundation for the admission of Exhibits 66 and 80. Exhibit 66 consists of telephone records seized from Jose Salamanca's apartment at 3638 Altadena. Exhibit 80 consists of microfiche copies of various phone bills--including several in the names of: (1) Jose Salamanca, (2) Scott and Dawn Walt, Scott Walt's wife, and (3) Juergon Thode. Both exhibits were admitted under the business records exception, Federal Rule of Evidence 803(6), over Walt's objections.
 
 
 22
 Business records submitted under Federal Rule of Evidence 803(6) are not self-authenticating; we require a proper foundation prior to admission. United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.1993). Specifically, a custodian or other "qualified witness" must establish that: "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded; [and] (2) the record is kept in the course of a regularly conducted business activity." Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 717 (9th Cir.1990). A qualified witness can be anyone who understands the record-keeping system involved. United States. v. Ray, 930 F.2d 1368, 1370 (9th Cir.1990).
 
 
 23
 The government's witness, Brenda Parham, provided the necessary foundation for admission of Exhibits 66 and 88. Parham, a manager at Pacific Bell, is familiar with Pacific Bell's record-keeping system. She testified that Exhibits 66 and 80 were exact copies of records periodically generated by the phone company and that such records were kept in the normal course of business. Nothing in either exhibit undermines its credibility or suggests a "lack of trustworthiness" meriting exclusion. See Miller, 771 F.2d at 1237.
 
 
 24
 Walt unpersuasively argues that because Parham did not herself generate or verify these records her foundational testimony constitutes hearsay. Although Ms. Parham did not prepare, file, or retrieve these records, Rule 803(6) does not require her to do so. See Ray, 930 F.2d at 1370 ("There is no requirement that the government establish when and by whom the documents were prepared."). The district court did not abuse its discretion.
 
 C. Exhibits 87 and 88
 
 25
 Walt objects to the admission of Exhibits 87 and 88 on the grounds that they do not fall within the business records exception, Federal Rule of Evidence 803(6). Exhibits 87 and 88 are pen register records from two telephone numbers belonging to Scott and Dawn Walt. The government's pen register recorded all phone numbers called from the Walts' phone numbers. The district court admitted these exhibits over Walt's relevancy objection. Walt did not object to the admission of these exhibits under Rule 803(6) and we therefore review only for plain error. United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993).
 
 
 26
 Walt's arguments fail. First, it is not clear that pen register records constitute hearsay. Even if they do, however, these records fall within the business records exception. Both Exhibits 87 and 88 were: "(1) made [during] a regularly conducted business activity; (2) kept in the regular course of that business, (3) the regular practice of that business to make the memorandum, (4) and made by a person with knowledge or from information transmitted by a person with knowledge." Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258 (9th Cir.1984) (internal quotations and citations omitted). The pen registers automatically recorded the needed information, they were installed by experts, and agents routinely employ pen registers in the course of their investigations. Nothing in the record suggests that pen register records lack trustworthiness.
 
 
 27
 The government correctly notes that pen register records are akin to telephone records, which we have admitted under the business records exception. See United States v. Linn, 880 F.2d 209, 216 (9th Cir.1988) (computer-generated hotel telephone record admitted under business records exception). We have also previously endorsed the admission of summaries of surveillance ledgers as business records under Rule 803(6). See Meyers, 847 F.2d at 1412.
 
 
 28
 We also reject Walt's argument that the pen registers were inadmissible because they were prepared solely for the purposes of litigation and therefore lack trustworthiness.
 
 D. Exhibits 82 and 83
 
 29
 Walt next argues that the district court erred in permitting Exhibits 82 and 83, the government's summary charts, to be reviewed by the jury in the jury room. Walt claims that: (1) the underlying exhibits were inadmissible, (2) the government did not properly enter the summary charts into evidence, and (3) the charts were inaccurate.
 
 
 30
 The government used these charts to supplement the testimony of Karen Beiszer, an intelligence analyst from the California Department of Justice. Ms. Beiszer designed the charts and testified from them at trial. The government did not offer these exhibits into evidence and the court never admitted them. At the jury's request and after several admonitions, the trial judge allowed the jury to view these charts in the jury room, over Walt's objection.
 
 
 31
 Two rules of evidence are relevant here: Rule 611(a) and Rule 1006. Rule 611(a) grants the court "reasonable control over the mode and order of interrogating witnesses and presenting evidence."[4] Rule 1006 authorizes the admission of summaries or charts in lieu of "voluminous writings, recordings, or photographs which cannot be conveniently examined in court."[5] Charts and summaries of evidence already admitted are not considered evidence, admissible as evidence or appropriate for use by the jury during deliberations. United States v. Wood, 943 F.2d 1048, 1053 (9th Cir.1991); see United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir.1987).
 
 
 32
 The district court abused its discretion here by submitting the summary charts; the charts were never admitted into evidence nor would they have been admissible under either Rule 611(a) or Rule 1006. The charts are not admissible under 611(a) because the government failed to lay a foundation outside the presence of the jury. See United States v. Soulard, 730 F.2d 1292, 1300 (9th Cir.1984). Rule 1006 is inapplicable because the district court had already admitted the underlying telephone records into evidence. See Wood, 943 F.2d at 1053.
 
 
 33
 Although the district court erred in permitting the jury to review the summary charts during its deliberations, this error was harmless. As noted, the government's evidence in this case was strong. The testimony of Bryant and Thode, coupled with the fact that the actual phone records summarized by the chart were admitted as evidence and available in the jury room, is sufficient to sustain Walt's conviction. See Poschwatta, 829 F.2d at 1481.
 
 V
 
 34
 Walt claims the district court erred by refusing to disclose the name of the government's confidential informant. Because Walt failed to properly object to the district court's rulings on this issue, we review for plain error. See United States v. Carvajal, 905 F.2d 1292, 1296 (9th Cir.1990).
 
 
 35
 We employ a balancing test in determining the necessity of compelling the government to disclose the identity of a confidential informant. See Roviaro v. United States, 353 U.S 53, 62 (1957); Sanchez, 908 F.2d at 1451. We balance the government's interest in the free flow of information from citizens to law enforcement officials about criminal activity against a defendant's interest in preparing a defense. See Roviaro, 353 U.S. at 62. The government's qualified privilege of confidentiality "must give way" where disclosure of an informant's identity or specific communications are "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61; see United States v. Spires, 3 F.3d 1234, 1238 (9th Cir.1993). In determining whether a court erred in failing to disclose a confidential informant's identity, we consider: "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Sanchez, 908 F.2d at 1451 (quoting Roviaro, 353 U.S. at 62). Walt bears the burden of establishing the need for disclosure; he must show more than a "mere suspicion" that disclosure would prove helpful. United States v. Williams, 898 F.2d 1400, 1402 (9th Cir.1990).
 
 
 36
 Having reviewed the transcript of the district court's in camera proceeding, we hold that Walt has not met his burden. The district court's in camera proceeding revealed nothing that would be pertinent to the defense. The informant was neither a participant in the criminal activity at issue, nor a percipient witness to any of the charged offenses. Nor could the informant have provided useful impeachment testimony. The district court did not abuse its discretion.
 
 VI
 
 37
 We deny Walt's challenge to his sentence under § 4B1.1 of the Sentencing Guidelines pursuant to the Supreme Court's recent decision in United States v. LaBonte, 1997 WL 273644, * 4.
 
 VII
 
 38
 The government appeals Walt's sentence on the grounds that the district court erred in finding Walt accountable for only 1,000 kilograms of marijuana. We review a district court's factual determination regarding the quantity of drugs attributable to a defendant for clear error. United States v. Sanchez, 967 F.2d 1383, 1384 (9th Cir.1992).
 
 
 39
 Section 1B1.3 of the Sentencing Guidelines holds a defendant responsible for all acts reasonably taken in furtherance of joint criminal activity. See United States v. Chavez-Gutierrez, 961 F.2d 1476, 1479 (9th Cir.1992). The government must establish by a preponderance of the evidence that the defendant was involved in each transaction considered. See Sanchez, 967 F.2d at 1385. In relation to drug cases, the court must "assess a defendant's 'individual ... level of responsibility' for the amount of drugs involved in an offense by determining, in accord with the Guidelines, the amount that the defendant 'could reasonably foresee ... would be involved' in the offense of which he was guilty." United States v. Nunez-Carreon, 47 F.3d 995, 998 (9th Cir.1995) (citations omitted), cert. denied, 115 S.Ct. 2287 (1995).
 
 
 40
 The district court found that the weight of marijuana attributable to Walt was between 700 and 1,000 kilograms. The court based its finding on: (1) the number of trips Thode made to distribute the marijuana, (2) Thode's estimates as to the amount of marijuana he transported, and (3) the amount of money Thode forfeited. Judge Turrentine found that to hold Walt responsible for more than 1,000 kilograms of marijuana would be "speculative."
 
 
 41
 The government provides insufficient evidence to establish that Judge Turrentine's ruling was clear error. The government never weighed the marijuana in question and provides no corroborating evidence, no ledgers or records to substantiate the relevant quantity. The government's various travel, hotel and phone records do not substantiate the relevant quantity. Nor does the actual length of the conspiracy, 18 months, or the seized marijuana, 57 pounds, help to provide evidence of quantity. The government's argument that Judge Keep found Walt's co-defendants, Thode and Alfredo Cervantes, responsible for up to 2300 pounds of marijuana (more than 1000 kilograms) is legally irrelevant. The law imposes no duty on courts to impose "equal" sentences on co-defendants. See United States v. Shabani, 48 F.3d 401, 404 (9th Cir.1995). We deny the government's challenge.
 
 
 42
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Title 21 U.S.C. § 853(k), entitled "Bar on intervention," reads:
 Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may--
 (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
 (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.
 
 
 [2]
 Rule 602, entitled "Lack of Personal Knowledge," reads:
 A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.
 
 
 [3]
 Rule 803(6), entitled "Records of regularly conducted activity," reads:
 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
 
 
 [4]
 Rule 611(a), entitled "Control by the court," reads in full:
 The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
 
 
 [5]
 Rule 1006, entitled "Summaries," reads:
 The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.