UNITED STATES of America,
Plaintiff–Appellee,

v.

Victor ROMERO–RENDON, aka Pedro
Macias, Defendant–Appellant.

No. 99–50137.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 30, 1999.

Opinion Filed Dec. 7, 1999.

Opinion Withdrawn July 31, 2000.

Filed July 31, 2000.

Joseph J. Burghardt, Federal Defenders, San Diego, California, for the defendant-appellant.

Roger W. Haines, Jr., Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: O'SCANNLAIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.

## ORDER

The opinion filed December 7, 1999 and reported at 198 F.3d 745 is withdrawn. The attached opinion is filed simultaneously with this order.

With these changes, the panel has unanimously voted to deny the petition for rehearing and to deny the petition for rehearing en banc. The full court has been

advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED.

Appellant's request to file further briefing is DENIED.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the district court abuses its discretion when it enhances a sentence based on the information contained in a Presentence Report the accuracy of which has not been challenged.

### I

The U.S. Border Patrol apprehended Victor Romero–Rendon as he attempted to enter the United States illegally on April 28, 1998. Computer checks revealed that he had been previously apprehended and deported by the Immigration and Naturalization Service (INS). The checks also uncovered that he had a criminal history in the United States. Romero–Rendon was indicted, and on August 31, 1998 pleaded guilty to one count of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326.

The probation officer prepared the Presentence Report ("PSR"), in which he recommended that the district court find that Romero–Rendon's base offense level be eight and that he have a Criminal History Category of II. The PSR also contained a recommendation that the base offense level be increased sixteen levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A), which provides for such upward adjustment where the defendant-alien has been previously deported following a conviction for an aggravated felony, i.e., "a crime of violence (as defined in section 16 of Title 18 ... ) for which the term of imprisonment [is] at least one year." *See* 8 U.S.C. § 1101(a)(43)(F). In turn, 18 U.S.C. § 16(a) defines "crime of violence" to mean "an offense that has as an element the use, attempted use, or threatened use of physi-

cal force against the person or property of another." *Id.* The PSR revealed that on March 31, 1992, Romero–Rendon pleaded guilty to assault with a firearm, a violation of California Penal Code § 245(a)(2), and received a five-year sentence. Hence the recommendation that a sixteen-level upward adjustment be made to his base offense level.

Romero–Rendon objected both prior to and at sentencing. He contended that in order to establish the previous conviction, the government must provide the sentencing judge with judgment or commitment documents from the previous conviction, his "rap sheet," or deportation documents. In its response to the objections, the government did not provide any of the requested documentation. Thus Romero–Rendon argued that the PSR alone was insufficient evidence to prove that he had been convicted of an aggravated felony. At no time did Romero–Rendon allege that the PSR contained any inaccuracies, nor did he contend that the judge incorrectly characterized his previous offense as an aggravated felony. At sentencing, the district court judge rejected the objections and, relying on the PSR, found that Romero–Rendon had previously committed an aggravated felony, and enhanced his base offense level by sixteen levels.

Romero–Rendon filed this timely appeal.

### II

As an initial matter, we must examine the appropriate evidentiary standard for establishing the conduct underlying this sentence enhancement. In most cases, the government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence. *See United States v. Torres,* 81 F.3d 900, 903 (9th Cir.1996). " '[W]hen a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction,' [however,] the government may have to satisfy a 'clear and convincing' standard." *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999) (quoting *Unit-*

ed States v. Restrepo, 946 F.2d 654, 659 (9th Cir.1991) (en banc)), *cert. denied,* *McKendrick v. United States,* —— U.S. ——, 120 S.Ct. 1179, 145 L.Ed.2d 1086 (2000).

Romero–Rendon argues that given the severity of the consequences of the enhancement in his case, the government should be required to prove the underlying offense by clear and convincing evidence, which it cannot do based only on the PSR. To support his argument for a heightened evidentiary standard in his case, Romero–Rendon relies primarily on *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and *Hopper.* In *Almendarez–Torres,* the Supreme Court rejected the argument that a previous aggravated felony is an element of the offense of being in the United States after having been deported following an aggravated felony. *See id.* at 1222. Instead, the Court held that the previous aggravated felony, which increases the maximum penalty from two to twenty years, is a sentence enhancement. *See id.* As such, the government need not charge it in the indictment and thus need not prove its existence beyond a reasonable doubt. *See id.* The Court, however, explicitly left undecided "whether some heightened standard of proof might apply to sentencing determinations which bear significantly on the severity of sentence." *Id.* at 1233.

Building on this opening left by the Supreme Court and relying on *Hopper,* Romero–Rendon argues that the district court should have used a "clear and convincing" standard of evidence. In *Hopper,* we considered the issue of sentence enhancements for violent conduct in conjunction with the defendants' conviction for conspiracy to obstruct the IRS. 177 F.3d at 829. Applying *Restrepo*'s "extremely disproportionate impact test," we concluded that the district judge should have required the government to prove the facts underlying the enhancement by clear and convincing evidence where the seven-level enhancement increased the median point of the defendant's sentencing range by 43

months from 24–30 months to 63–78 months. *See id.* at 833. Romero–Rendon's sixteen-level enhancement increased the median of his sentencing range 39 months from 4–10 months to 41–51 months. He argues that the closeness between the severity of these enhancements indicates that the correct standard of proof in this case is clear and convincing evidence.

There is some uncertainty in this circuit as to when the higher burden of proof applies. In *Hopper,* we held that an enhancement that raises the median of the sentencing range by nearly three times triggers the higher standard of proof. In *United States v. Sanchez,* 967 F.2d 1383, 1386–87 (9th Cir.1992), we held that an enhancement that raises the median of the sentencing range by nearly six times does not trigger the clear and convincing standard. In *United States v. Harrison–Philpot,* 978 F.2d 1520, 1523–24 (9th Cir.1992), we held that an enhancement that raises the median sentencing range by more than seven times does not require a higher standard of proof. These cases appear to conflict. Even if the distinction lay in the difference between sentence enhancements based on the quantity of drugs involved in an offense (*Sanchez* and *Harrison–Philpot*) and enhancements based on uncharged criminal conduct (*Hopper*), it is unclear which line of cases would apply here, where the enhancement was based on previous criminal conduct of which Romero–Rendon was convicted. We need not, however, resolve this potential conflict because it would not alter the outcome of this case.

### III

■ We have previously held that a district court may rely on an unchallenged PSR at sentencing to find by a preponderance of the evidence that the facts underlying a sentence enhancement have been established. *See United States v. Marin–Cuevas,* 147 F.3d 889, 895 (9th Cir.1998). The Sentencing Guidelines allow judges to

rely at sentencing on "any information . . . so long as it has sufficient indicia of reliability to support its probable accuracy." *Id.* at 894–95 (quotations omitted). As we wrote in *Marin–Cuevas,*

> In this case, the only evidence presented by either side was the presentence report. As the district court explained, Marin–Cuevas has never denied he was convicted of those misdemeanors. He has argued only that the government failed to provide sufficient evidence. Because the only evidence before the sentencing court was the Presentence Report, the preponderance of the evidence sustains the district court's finding.

*Id.* at 895.

In his effort to elude the grasp of *Marin–Cuevas,* Romero–Rendon argues (1) that in contrast to the sentencing court in *Marin–Cuevas,* the court here needed to know the specific statute of conviction in order to determine whether the offense met the definition of an aggravated felony; and (2) that the consequence of relying on the PSR in this case was more serious

since it increased the maximum penalty from two to twenty years.[1] Neither argument withstands scrutiny.[2]

Romero–Rendon argues that the PSR provides an insufficient basis for the sentence enhancement in this case because the district court must know the exact statute under which he was previously convicted in order to determine whether his conviction constituted an aggravated felony. He argues that in contrast, in *Marin–Cuevas,* the court did not need to know the exact statute of conviction to establish the number of criminal history points at issue; it needed to know only the amount of time served for each conviction.

■ Regardless of the strength of this distinction, it is beside the point here because the PSR includes the specific statute of conviction. The PSR stated that he pleaded guilty to a violation of California Penal Code § 245(a)(2). Thus the judge had all the information that Romero–Rendon claims he needed to decide that his prior conviction was for an aggravated felony.[3] Following *Marin–Cuevas,* a district

---

1. Romero–Rendon never specifies which conclusion of *Marin–Cuevas* he finds inapplicable: that a judge does not abuse his discretion when he concludes that the PSR is sufficiently reliable to be used at sentencing, or that a judge does not clearly err when he makes a finding based on an uncontroverted PSR, which is the only item of evidence before him.

2. Romero–Rendon also relies on an out of circuit case, *United States v. Barney,* 955 F.2d 635 (10th Cir.1992). In *Barney,* the court held that where an enhancement is based on a conviction obtained by a guilty plea, the court may look to the underlying facts contained in the indictment or information to determine whether the defendant's conduct fell within the Supreme Court's definition of burglary. *See id.* at 639. The court stated that the sentencing court may not rely on the PSR for such information. It went on the say that, "To the extent that the district court considered convictions of Mr. Barney not noticed and only mentioned in the presentence report, it erred." *Id.* at 640. Just what the court meant is unclear. This language seems to comport with our holding in *Potter* that where the sentencing court must go beyond the statute of conviction to look at the under-

lying facts, it should have more than the PSR. This interpretation is supported by a later Tenth Circuit case, *United States v. Haslip,* 160 F.3d 649 (10th Cir.1998) (holding that the propriety of a sentence enhancement is determined by looking to either the statutory definition of the underlying crime or, if this is not possible, the charging papers). Or, as the government argues, the court may only have meant that the district court errs if it relies on convictions "mentioned" in the PSR when the defendant has no "notice" that these convictions will be included in the calculation of violent felonies. In any case, because Romero–Rendon's appeal is controlled by Ninth Circuit law, it is unnecessary for us to determine what the Tenth Circuit meant.

3. California Penal Code § 245(a)(2) makes it a crime punishable by up to four years in prison to "commit[ ] an assault upon the person of another with a firearm. . . ." *Id.* Using this definition, a sentencing judge could conclude that this crime qualifies as an aggravated felony, i.e., a crime that has as an element the use of physical force against the person of another for which the term of imprisonment is at least one year. *See* 8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16(a).

judge does not abuse his discretion when he determines that the PSR is sufficiently reliable to calculate criminal history points. In *Marin–Cuevas*, the court held that the PSR had sufficient indicia of reliability because the probation officer obtained his information from a reliable source (the computerized criminal history) and had no reason to present anything other than the truth. *See id.* at 895. Similarly, in this case, there is no discernable reason why the officer who prepared the PSR should be dishonest, and the Report listed the sources of the probation officer's information: computer checks from the FBI, CII, Bureau of Prisons, INS, and other state and federal government agencies. Thus it is difficult to see why the specification of a statute of conviction in a PSR would be any less reliable than the PSR's description of the defendant's criminal history endorsed in *Marin–Cuevas*. We hold that it is not and thus may be relied on by the sentencing judge.

Romero–Rendon also objects that the severity of the enhancement and the consequent higher standard of proof make *Marin–Cuevas* inapplicable to his case. We need not decide whether the severity of this enhancement raises the standard of proof because we hold that in this case the uncontroverted PSR, the only evidence before the sentencing judge, provides clear and convincing evidence of the previous conviction. *Marin–Cuevas* did not limit its holding to instances in which the consequences of making findings based on a

PSR are not severe. Here, the PSR noted the statute under which Romero–Rendon had been convicted and the source of this information. Romero–Rendon never questioned the factual accuracy of the PSR nor the classification of his previous conviction as a crime of violence. The PSR, the only evidence of Romero–Rendon's criminal history, was clear and convincing evidence of Romero–Rendon's previous conviction.[4]

Contrary to Romero–Rendon's contention, *United States v. Potter*, 895 F.2d 1231 (9th Cir.1990), does not teach that a PSR cannot be clear and convincing evidence of any of the information it details. In *Potter*, we considered the issue of enhancements in the context of 18 U.S.C. § 924(e)(1), which establishes mandatory minimum sentences for certain convicted individuals with three prior violent felonies. 895 F.2d at 1235. The defendant had been convicted of possession of a firearm by a felon. *See id.* at 1232. Pursuant to 18 U.S.C. § 924(e), the district court enhanced his sentence for having three prior violent felonies. *See id.* As a factual basis for this enhancement, the court relied only on the PSR, which listed and described the prior felonies. *See id.* at 1233. On appeal, the defendant argued, in pertinent part, that he had committed an insufficient number of prior felonies to warrant the enhancement. *See id.* at 1235. The defendant contended in particular that his convictions for burglary and rape by

---

4. In his petition for rehearing and petition for rehearing en banc, Romero–Rendon cites *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), in which the Supreme Court held that a defendant who has pleaded guilty does not waive her right to remain silent at the sentencing hearing and that the sentencing judge may not draw an adverse inference from her silence. Romero–Rendon would like us to draw from this holding the rule that no consideration can be given to the fact that he offered no evidence to challenge the accuracy of the PSR. *Mitchell* cannot be read for such a broad proposition. The government bears the burden of proving the facts underlying the enhancement. Where, as here, it submits the PSR as proof,

and the defendant submits no contrary evidence, the only evidence before the sentencing judge is the uncontroverted PSR. In these cases, a judge may rely on it to establish the factual basis for the enhancement. To hold that *Mitchell* dictates otherwise would be to allow the defendant's muteness effectively to rebut the government's evidence. Romero–Rendon's argument confuses drawing an adverse inference from a refusal to testify at sentencing (unconstitutional as per *Mitchell*) with recognizing that where a defendant has put forward no evidence, the uncontroverted evidence introduced by the government may be clear and convincing proof of the matters asserted (what we do here).

force did not meet the definitions of violent felonies.

We reviewed the prior felonies de novo to determine whether the district court correctly concluded that the defendant had previously been convicted of three violent felonies. We first looked at the burglary conviction. Relying only on the PSR's specification of the statute under which the defendant had been convicted, we determined that the burglary met the requirements of a violent felony. *See id.* at 1236. We then turned to the conviction for rape by force. Here we were stymied because the PSR did not specify under which section of the state penal code the defendant had been convicted. *See id.* at 1237. Although the PSR gave a short description of the offense, the sentencing court was required to look to the specific statutory definition of the offense of which the defendant was convicted. *See United States v. Sherbondy,* 865 F.2d 996, 1005–06, 1009–10 (9th Cir.1988).[5] Because the PSR did not specify which statute the defendant had been convicted of violating, we could not determine, based on the PSR, whether the defendant's prior conviction fell under the definition of a violent felony:

> However, the presentence investigation report, while noting Potter's conviction for "Rape by Force," does not mention the specific statutory section (and subsection) under which Potter was convicted. We are *thus* faced with the question of what constitutes the quantum of proof necessary to determine that a given prior conviction was for a "violent felony" under § 924(e)(1).

*Potter,* 895 F.2d at 1237 (emphasis added).

Only then did we observe, in the language relied on by Romero–Rendon, that a district court should have copies of the judgment before it determines whether a previous conviction qualifies as a violent felony:

> [I]t is important that the sentencing court and the appellate court be certain of the specific statutory sections under which the defendant previously was convicted; all too often a popular description of a prior offense will not enable the court to determine whether the relevant [enhancement applies].... Given the gravity of the penalty and *Sherbondy*'s emphasis on the statutory elements of the prior offense, we conclude that a court should have copies of the judgments of conviction before it when determining whether a defendant has previously been convicted of "violent felonies" within the meaning of § 924(e)(1), although we do not foreclose the possibility that a defendant's conviction under a specific statutory section or subsection might be established by some other form of clearly reliable evidence. A presentence investigation report does not meet even the latter requirement.

*Id.* at 1238. Read in light of the entire opinion, the preceding language cannot be interpreted to mean that a PSR alone can never support a finding of the aggravated felony underlying the enhancement where the consequences of that sentence enhancement are severe. We had already found that the defendant's burglary constituted a violent felony by looking only to the PSR. The severity of the enhancement which concerned us resulted as much from the burglary conviction as from the rape conviction. Whatever *Potter* stated regarding a PSR that does not make known the specific statute of conviction, its analysis makes clear that for the purposes of Romero–Rendon's case, *Potter* held that despite the grave consequences of the enhancement, evidence additional to an un-

---

5. In *Sherbondy,* we held that to determine whether a defendant's prior conviction is a violent felony for the purposes of 18 U.S.C. § 924(e)(1) a court is to look to the statute under which the defendant was convicted, not the underlying facts of that conviction. *Accord United States v. Lomas,* 30 F.3d 1191, 1193 (9th Cir.1994) (holding that to determine whether a conviction constitutes an aggravated felony for the purpose of 8 U.S.C. § 1326, a court should look to the statutory definition of the crime, not to the underlying facts).

controverted PSR is not necessary if the PSR specifies the statutory section of conviction.

Romero–Rendon cannot benefit from *Potter*'s holding that the PSR satisfies the higher level of certainty warranted by the severity of the enhancement where it makes clear the statute of conviction. The PSR in this case specifies the statute under which he was convicted, and he has never alleged that the PSR is inaccurate. Thus, consistent with *Potter*, the unchallenged PSR in this case, the only evidence before the court, is sufficient evidence of the aggravated felony even where the enhancement is severe.

IV

We need not resolve the possible conflict in our case law and decide which evidentiary standard applies here. In this case, the uncontroverted PSR indicating the previous statute of conviction and bearing previously endorsed indicia of reliability, the only evidence before district court, was clear and convincing evidence of the factual basis for the enhancement.

AFFIRMED.