UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald JORDAN, Defendant–Appellant.

No. 97–10255.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2000.

Filed July 5, 2001.

Patience Milrod, Fresno, California, for the defendant-appellant.

Dawrence W. Rice, Jr., Office of the U.S. Attorney, Sacramento, California, William L. Shipley, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: B. FLETCHER, O'SCANNLAIN, and GOULD, Circuit Judges.

Opinion by Judge RONALD M. GOULD; Concurrence by Judge O'SCANNLAIN.

RONALD M. GOULD, Circuit Judge:

Appellant Ronald Jordan ("Jordan") pled guilty to one count of bank robbery in

violation of 18 U.S.C. § 2114(a). The district court increased Jordan's offense level by five for possession of a firearm during the robbery and by an additional four for abducting a witness during his escape. On appeal, Jordan contends that the disproportionate impact of these sentencing enhancements required the district court, in determining facts relating to such enhancements, to apply a standard of proof of "clear and convincing evidence," rather than a "preponderance of evidence" standard. We agree, and vacate the sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Bank Robbery

On April 14, 1996, at approximately 8:10 a.m., Patricia Settle ("Settle"), the Vice President of the Home Savings of America branch in Bakersfield, California, arrived at work. While Settle was conducting a "walk around" of the bank, a royal blue van approached behind her. A man, later identified as Jordan, dressed in a security uniform got out of the van and told Settle, "Look down. Don't look up!" Settle did not observe a firearm, but noticed that Jordan carried a walkie talkie radio.

Jordan and Settle entered the bank. Jordan then learned from Settle that she needed another employee to open the vault and safe. Jordan used his walkie talkie to ask an accomplice to come inside the bank. Once other employees arrived, Jordan ordered them to sit at desks in the middle of the bank. Jordan instructed Settle and an unidentified employee to empty the contents of the safe and the ATM machine into two plastic bags. Next, Jordan told his accomplice to put everyone inside the vault. The employees were escorted to the vault, placed inside, and the door was closed but not locked. After a few seconds, Settle used the telephone inside the

vault to call the police. The bank suffered a loss of approximately $50,969.

Most individuals present at the robbery gave statements to police. Settle and Harris, a bank employee, said that they did not observe a firearm in Jordan's possession. Employees Tokash, Gough, and Wiggens did not mention observing a gun. Employee Carpenter said that Jordan had his right hand concealed in his jacket and that she "believed a weapon may have been concealed." However, Carpenter also said that she "avoided looking at the suspects" and did not believe she could identify either one if seen again. Graham, a high school student in training, said that she "could not remember specifically," but thought that Jordan had a gun or a knife strapped to his right hip. Sarkiassian, a customer, said that she saw the butt of a gun protruding from Jordan's right hand.

### B. Alleged Abduction

Around 10:40 a.m. that morning, Jordan and an unidentified woman contacted Carolyn Howard ("Howard") as she was leaving her apartment. According to Howard's version of events stated in police reports, Jordan forced himself into her apartment. Once inside, Jordan spoke on his cell phone, allegedly stating, "It just went down this morning, they jacked the Lexus, we're trying to get away, we're surrounded by police." Howard told the police that Jordan was armed with a handgun. About twenty minutes later, Jordan told Howard to drive him and the unidentified woman to the California Inn Motel. There, Jordan, the woman, and Howard entered a motel room where, according to Howard, she observed a large quantity of money, several guns, and two additional men and two additional women.

Howard claims that she was told to drive one of the three women past How-

ard's apartment. According to Howard, when they drove by they saw police surrounding a Lexus and a van. Howard and the woman then returned to the California Inn Motel and reentered the room. After this, the group of suspects allegedly put the guns into the trunk of Howard's car, and she then drove them to the Econo Lodge. Howard was given fifty dollars and told to get a room in her name. Howard registered and they entered the room. She then drove two women to the Quality Inn where one went inside a motel room, removed items, and placed them in the trunk of Howard's vehicle. Howard stayed at the Econo Lodge for about 45 minutes, allegedly making several attempts to leave. Around noon, Jordan requested and received Howard's telephone and pager numbers. Jordan then allowed her to leave. After Howard returned home, she went to the mall.

When Howard returned to her apartment around 6:30 p.m., she spoke to the maintenance man who informed her of a $100,000 reward for information about the bank robbery. Howard contends that she had no idea the individuals who allegedly abducted her were responsible for a bank robbery until the maintenance man told her what he had heard on the news. Howard then contacted authorities.

Howard was later administered a polygraph test in three parts. First, she answered questions on whether she knew the individuals who robbed the bank. Her score indicated clear deception. Second, she was asked whether her boyfriend knew the individuals who robbed the bank. Again, her score indicated clear deception.

The third and final part related to whether Howard knew of the bank robbery in advance. Her score was inconclusive, but leaned towards deception.

## C. Sentencing

Jordan was indicted for armed bank robbery and for carrying a firearm during a crime of violence, in violation of 18 U.S.C. §§ 2113(a), (d), and 924(c)(1). Pursuant to a written plea agreement, Jordan pled guilty to a violation of 18 U.S.C. § 2113(a), with remaining counts dismissed.

The plea agreement provided that the government would recommend a three-level sentencing reduction for acceptance of responsibility, dismiss the superseding indictment at sentencing, and recommend the low end of the applicable sentencing range. The agreement also noted that the parties disputed whether Jordan possessed a firearm during the bank robbery.

Jordan's case was referred to the probation office for a presentence report ("PSR"). The probation officer calculated a total offense level of 32 and recommended a sentence of 236 months—the middle of the applicable range.[1] Jordan submitted a sentencing memorandum and objections to the PSR.

The court held a sentencing hearing on April 14, 1996. Under then-extant circuit precedent, see, e.g., United States v. Restrepo, 946 F.2d 654, 659–60 (9th Cir.1991) (en banc), the government told the court that the preponderance of evidence standard of proof applied at sentencing. Jordan objected to the PSR's factual findings,

---

1. Pursuant to United States Federal Sentencing Guidelines Manual ("U.S.S.G."), Jordan's base offense level was 26 after adjustments for a robbery of over $50,000 from a financial institution (§ 2B3.1) and reckless endangerment (§ 3C1.2). The probation officer added an additional five levels for brandishing a firearm (§ 2B3.1(b)(2)(C)) and four levels for abduction to facilitate escape (§ 2B3.1(b)(4)(a)), bringing the offense level to 35. After the three-level reduction for acceptance of responsibility, Jordan's offense level totaled 32.

contending that the evidence was insufficient to find that he was armed during the robbery or that he abducted Howard to facilitate escape. Jordan did not, however, challenge the applicable standard of proof.

The district court overruled Jordan's objections and followed the PSR:

> The—on the kidnapping, it's quite obvious, that this lady was not anxious to recognize that she didn't know Mr. Jordan and there is some concerns for her safety. And that's the area that the [polygraph] report seems to indicate she was having problems. I'm satisfied that there was a kidnapping, which was not much different than what was happening at the bank.
>
> I'm also satisfied that Mr. Jordan ... was armed, both from the testimony at the time of the robbery and the circumstances afterwards.

The district court sentenced Jordan to 236 months imprisonment, 36 months supervised release, and a $100 special assessment fee.

 After the court sentenced Jordan but before his appeal, we held that when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction, due process requires that the government prove the facts underlying the enhancement by clear and convincing evidence. *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir.1999), *cert. den.*, *McKendrick v. United States*, 528 U.S. 1163, 120 S.Ct. 1179, 145 L.Ed.2d 1086 (2000).

On appeal, Jordan challenges his sentence and contends that the disproportionate impact of the sentencing enhancements required proof by clear and convincing evidence, and not merely a preponderance of the evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I.

 We review de novo the district court's interpretation of the sentencing guidelines. *United States v. Dixon*, 201 F.3d 1223, 1233, (9th Cir.2000). We review for clear error the factual findings underlying the sentencing decision. *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir.1997). Because Jordan failed to object to the district court's application of the preponderance standard, we review for plain error. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *see also United States v. Olano*, 507 U.S. 725, 730–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[2]

Before an appellate court can correct an error not raised at trial, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal quotation marks and citations omitted); *see also United States v. Morfin*, 151 F.3d 1149, 1151 (9th Cir.1998); *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997).

Jordan contends that the disproportionate impact of the two disputed sentencing enhancements—one for possession of a

---

**2.** However, because due process protects a defendant's interest in fair sentencing, we review the district court's application of the standard of proof at sentencing for harmless error beyond a reasonable doubt if a defendant makes a timely objection to an error. *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir.2000).

firearm during a robbery and another for abduction to facilitate escape—required the district court to apply the "clear and convincing evidence" standard of proof, as opposed to the "preponderance of evidence" standard. Jordan's position has merit.

### A.

█ We first determine ·whether the district court erred by failing to require clear and convincing evidence to prove the disputed sentence enhancements for firearm possession and abduction. We conclude that clear and convincing evidence is required for proof of the disputed enhancements.

We do not write on a blank slate. In *Restrepo*, 946 F.2d at 659, we recognized that due process is generally satisfied by using a preponderance of the evidence standard to prove sentencing factors that are set forth in the U.S.S.G. *Id.* (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). We suggested in dicta that the Supreme Court has recognized that "there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." *Id.* (citing *McMillan*, 477 U.S. at 87–91, 106 S.Ct. 2411 (1986)).[3] However, we held that the "extremely disproportionate effects that might lead the Supreme Court to require a higher standard of proof at sentencing have nothing in common with this case." *Restrepo*, 946 F.2d at 660.

In *Hopper*, 177 F.3d at 833, we held for the first time that "the district court erred in failing to apply the clear and convincing

standard" in weighing the evidence offered to support a sentencing enhancement. There, we concluded that the facts underlying the enhancement should have been proved by clear and convincing evidence where the seven-level adjustment increased the defendant's sentencing range from 24–30 months to 63–78 months. *Id.* For another defendant, however, we held that a "four-level increase in sentence is not an exceptional case that requires ·clear and convincing evidence." *Id.* (citing *Watts*, 519 U.S. at 156–57, 117 S.Ct. 633; *United States v. Kikumura*, 918 F.2d 1084, 1100–01 (3d Cir.1990)).

In *Mezas de Jesus*, 217 F.3d at 643, we reaffirmed *Hopper* and held that the district court erred in applying the preponderance of the evidence standard in imposing a sentencing enhancement for uncharged criminal conduct. There, the defendant received a nine-level enhancement on the grounds that he committed a firearm offense during an uncharged kidnapping. *Id.* at 645. We held that the difference between the "relatively short" unenhanced sentence of less than two years and the nearly five-year sentence imposed "based on an offense for which [the defendant] was never even charged," created an extremely disproportionate impact requiring application of a clear and convincing evidentiary standard. *Id.* at 643; *see also United States v. Munoz*, 233 F.3d 1117, 1127 (9th Cir. 2000) (holding that a nine-level upward adjustment in sentence level for uncharged conduct was sufficiently disproportionate to require the district court to apply the clear and convincing evidence standard to the factual findings.).

---

**3.** *See also United States v. Watts*, 519 U.S. 148, 156–57, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (recognizing a split in the circuits on the issue whether conduct relevant to a sen-

tence enhancement must be proved by clear and convincing evidence in extreme circumstances).

Since *Hopper* and *Mezas de Jesus*, we have correctly noted uncertainty within our circuit about when the disproportionate impact test applies. *See United States v. Romero–Rendon*, 220 F.3d 1159, 1161 (9th Cir.2000) (citing *Hopper*, 177 F.3d at 833; *United States v. Sanchez*, 967 F.2d 1383, 1386–87 (9th Cir.1992); *United States v. Harrison–Philpot*, 978 F.2d 1520, 1523–24 (9th Cir.1992)). We have not set a bright-line rule for the disproportionate impact test. Instead, we have looked at the "totality of the circumstances," without considering any one factor as dispositive. *United States v. Valensia*, 222 F.3d 1173, 1182 (9th Cir.2000), *cert. granted, judgment vacated, and remanded by* —— U.S. ——, 121 S.Ct. 1222, 149 L.Ed.2d 133 (2001).

In *Valensia*, we identified several factors relating to disproportionate effect. These include: (1) whether "the enhanced sentence fall[s] within the maximum sentence for the crime alleged in the indictment;" (2) whether "the enhanced sentence negate[s] the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment;" (3) whether "the facts offered in support of the enhancement create new offenses requiring separate punishment;" (4) whether "the increase in sentence [is] based on the extent of a conspiracy;" (5) whether "the increase in the number of offense levels [is] less than or equal to four;" and (6) whether "the length of the enhanced sentence more than double[s] the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence." *Id.*

Considering these factors in *Valensia*, we held that two separate enhancements— each a two-level enhancement—did not show disproportionate impact. We reasoned that the aggregated enhancements led only to a four-level increase in offense level, that the sentence imposed was "far less than a 100% increase in the sentence authorized by the initial sentencing guideline range," *id.* at 1182, and that given criminal history and offense level, "the contested four-level enhancement did not present an 'exceptional case that requires clear and convincing evidence.'" *Id.* at 1182–83 (quoting *Hopper*, 177 F.3d at 833). Thus, we held that Valensia was not deprived of due process when the district court determined the facts pertinent to the enhancements pursuant to the preponderance of the evidence standard. *Id.* at 1183.

*Valensia* is significant for two primary reasons. First, it summarizes the factors previously considered significant by us in assessing disproportionate impact, while directing that we consider these or other factors based on the "totality of the circumstances." *Id.* at 1182. This test is consistent with the "flexible" requirements of due process. *Id.* For this reason, the six *Valensia* factors may not necessarily exhaust all possible circumstances relevant to our due process assessment.

Second, and equally important, in *Valensia* the court aggregated two challenged enhancements to evaluate disproportionate impact. The court considered a disputed two-level enhancement for a leadership role and another two-level enhancement for firearm possession. In applying the factors identified as pertinent to disproportionate impact, the court explicitly and unambiguously considered the effect of the *combined* four-level increase in offense level from these enhancements. *Id.* at 1181–83.

We apply the rule announced in *Hopper* and clarified in *Valensia*. If Jordan's sentencing hearing were conducted today, the failure to apply the clear and convincing evidence standard of proof would be error.

*Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (a "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review ..., with no exception for cases in which the new rule constitutes a 'clear break' with the past.").

Considering the six *Valensia* factors, we conclude that factors one, two, three, and four do not apply to this matter. Jordan's enhanced sentence falls within the maximum sentence for the crime alleged in the indictment, the enhanced sentence does not negate the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment, the facts offered in support of the enhancements do not create new offenses requiring separate punishment, and the increase in sentence is not based on the extent of a conspiracy. *Valensia,* 222 F.3d at 1182.

The fifth *Valensia* factor—whether the increase in the total number of offense levels is less than or equal to four—strongly supports application of the clear and convincing evidence standard. Jordan challenges the aggregated nine-level enhancement of his offense level, which was imposed for firearm possession (five levels) and abduction to facilitate escape (four levels).[4]

The sixth *Valensia* factor—whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range—applies to this case with even more compelling force. Pursuant to U.S.S.G. section 2B3.1, the base offense level for a violation of 21 U.S.C. § 2113(a) is 20. With a criminal history category of VI,

Jordan's initial sentencing guideline range—unenhanced for specific offense characteristics—would have totaled 70–87 months. The contested enhancements alone increased Jordan's sentence range from 70–87 months to 151–188 months—exposing him to a 81–101 month increase in imprisonment and more than doubling the length of his sentence. Given Jordan's criminal history and base offense level, the contested nine-level enhancement presents an " 'exceptional case that requires clear and convincing evidence.' " *Valensia,* 222 F.3d at 1182 (quoting *Hopper,* 177 F.3d at 833).

We hold that the challenged sentencing factors had an extremely disproportionate effect on Jordan's sentence relative to the offense of conviction. The district court did not apply the clear and convincing evidence standard, and this was error.

### B.

We next determine whether this error was "plain." The United States Supreme Court has explained that the word "plain" is "synonymous with 'clear' or, equivalently, 'obvious.' " *Olano,* 507 U.S. at 734, 113 S.Ct. 1770 (1993). "[I]n a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." *Johnson,* 520 U.S. at 468, 117 S.Ct. 1544.

At the time of Jordan's sentencing, settled law provided that the preponderance standard of proof applied at sentencing. *Restrepo,* 946 F.2d at 659. By the time of our appellate consideration, however, the law had changed. *Munoz,* 233 F.3d at

---

4. The government sought to increase Jordan's offense level based on the following: +2 (financial institution) +2 (amount of loss) +2 (reckless endangerment) +4 (abduction to facilitate escape) +5 (brandishing firearm) 3 (acceptance of responsibility) = 12 total. On appeal, Jordan does not challenge the imposition of the other enhancements, but simply challenges the imposition of the nine-level enhancement.

1126–27 (recognizing change in law after sentencing and before appellate decision) (citing *Hopper,* 177 F.3d at 829; *Mezas de Jesus,* 217 F.3d at 643). It is now settled that when a sentencing factor has an extremely disproportionate impact on the sentence relative to the offense of conviction, due process requires that the government prove the facts underlying the enhancement by clear and convincing evidence. *Munoz,* 233 F.3d at 1127.

■ Because the impact of Jordan's sentencing enhancements was clearly disproportionate, our precedents required that the district court apply the clear and convincing standard. The application of an incorrect standard of proof to enhancements with disproportionate impact was error that is plain.

### C.

An error that is plain must also "affect substantial rights." In most cases this language means that "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770 (citations omitted). Jordan therefore must make a specific showing of prejudice to satisfy this prong.[5] However, it is evident beyond doubt that Jordan's increased incarceration caused by the challenged enhancements is prejudicial if these enhancements could not have been proved by clear and convincing evidence.

We have previously said that "the preponderance of the evidence standard is a meaningful one that requires the judge to be convinced by a preponderance of the evidence that the fact in question exists." *Mezas de Jesus,* 217 F.3d at 643 (quotation marks and citation omitted). But, in contrast, the clear and convincing evidence standard is even more demanding and requires that the government "prove [its] case to a higher probability than is required by the preponderance-of-the-evidence standard." *California ex rel. Cooper v. Mitchell Bros.' Santa Ana Theater,* 454 U.S. 90, 93 n. 6, 102 S.Ct. 172, 70 L.Ed.2d 262 (1981); *see also* Black's Law Dictionary 577 (7th ed.1999) (stating that clear and convincing evidence "indicat[es] that the thing to be proved is highly probable or reasonably certain. This is a greater burden than preponderance of the evidence, ... but less than evidence beyond a reasonable doubt...").

■ We think all would agree that the application of the correct burden of proof at a criminal sentencing hearing is critically important. *Rose v. Clark,* 478 U.S. 570, 580–82, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (holding that instructing the jury correctly regarding the burden of proof is of critical importance in a criminal case and that an error in this regard is of constitutional magnitude); *see also Carvalho v. Raybestos–Manhattan, Inc.,* 794 F.2d 454, 455 (9th Cir.1986) (recognizing that burden of proof affects all aspects of verdict and that it is impossible to determine whether erroneous burden of proof was outcome determinative).

---

**5.** The Supreme Court has explained the difference between Federal Rules of Criminal Procedure 52(a) and (b) as follows:

> When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record—a so-called "harmless error" inquiry—to determine whether the error was prejudicial.

> Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.

*Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

Here, Jordan specifically contested factual allegations that directly and severely affected the length of his sentence, more than doubling it. As discussed below, the evidence offered to support these enhancements may have failed to satisfy the clear and convincing evidence standard of proof, which was not applied by the district court. If the evidence for enhancement was not clear and convincing, Jordan clearly suffered prejudice due to the application of an incorrect burden of proof.

We hold that the district court's failure to apply the clear and convincing standard constitutes plain error that affected Jordan's substantial rights.

### D.

When the first three parts of the plain error test are met, "an appellate court must then determine whether the forfeited error seriously affects the fairness, integrity or public reputation of judicial proceedings before it may exercise its discretion to correct the error." *Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544 (internal quotation marks and citation omitted).[6]

Jordan argues that had the district court properly applied the clear and convincing standard of proof, it would have concluded that the evidence presented by the government was unreliable and insufficient to support the firearm and abduction enhancements. Jordan contends that the district court's failure to apply the correct

burden of proof—given the questionable nature of the evidence—seriously affects the fairness and integrity of his sentence.

Some discussion of the evidence is necessary to assess this contention. When finding that Jordan possessed a firearm during the robbery and abducted a witness in furtherance of his escape, the district court stated that it relied on "the probation report, as well as the objections and responses" to the report. The factual details in the PSR consisted primarily of excerpts from police and FBI witness statements. Although hearsay evidence may be used in sentencing, U.S.S.G. § 6A1.3(a), we have held that "a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information." *United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.1993), *amended on denial of reh'g,* 992 F.2d 1015 (9th Cir.1993).

We address separately Jordan's arguments about the evidence relating to each challenged enhancement.

#### 1. Firearm enhancement

U.S.S.G. section 2B3.1(b)(2)(C) provides for a five-level increase when a firearm is brandished or possessed. In *United States v. Huckins,* 53 F.3d 276, 279 (9th Cir.1995), we held that, standing alone, the statement of a single bank teller that she believed the defendant had a gun "because he kept his hands in his pockets at all

**6.** The Supreme Court has previously explained that:

[T]he discretion conferred by Rule 52(b) should be employed "in those circumstances in which a miscarriage of justice would otherwise result." In our collateral-review jurisprudence, the term "miscarriage of justice" means that the defendant is actually innocent. The court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant, but

we have never held that a Rule 52(b) remedy is only warranted in cases of actual innocence.... An error may "seriously affect the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence. Conversely, a plain error affecting substantial rights does not, without more, satisfy [this] standard, for otherwise the discretion afforded by Rule 52(b) would be illusory.
*Olano,* 507 U.S. at 736–37, 113 S.Ct. 1770 (internal citations omitted).

times during [the] robbery" did not prove by a preponderance of the evidence that the defendant was armed.

As previously discussed, of the six employees present during the robbery here, Carpenter was the only employee who allegedly observed a gun. Carpenter stated to police that Jordan had his right hand concealed in his jacket on top of his abdomen and *"believed* a weapon may have been concealed." (Emphasis added). But Carpenter also said that she "avoided looking at the suspects" and did not believe she could identify either one if seen again. Thus, none of the bank employees—who are trained to notice details during robberies to assist law enforcement—definitively observed Jordan with a firearm at the time of the robbery. Graham, a high school student in training, stated that although she "could not remember specifically," she thought she recalled that Jordan either had a gun or a knife strapped to his right hip. Sarkiassian, a customer, claims to have seen the butt of a gun sticking out of Jordan's right hand. Thus, of the eight witnesses present during the robbery, Sarkiassian is the only individual who squarely claims to have seen a gun.

In addition, none of the witnesses testified under oath or at trial where they could be cross-examined. *See Huckins,* 53 F.3d at 279. Furthermore, the probation officer did not attempt to interview these individuals to determine precisely what they witnessed. Rather, the PSR merely repeated statements the witnesses gave to police.

To be sure, there was other evidence that might support a finding of firearm possession during the robbery. For example, it may be probative that Howard said

that she viewed guns, money, Jordan and his accomplices together in a hotel room shortly after the robbery. However, her credibility might be questioned through a cross-examination that was not available to Jordan. We are in no position to make a credibility assessment on a cold record. But, where, as here, the district court applied the wrong standard of proof, we must necessarily conclude that the fairness and integrity of the proceeding is threatened. Because of contradictory statements and a lack of testimony under oath subject to cross-examination, we cannot determine whether the evidence offered to support the firearm enhancement was sufficiently reliable to support a finding that Jordan possessed a firearm during the bank robbery by clear and convincing evidence.

2. Abduction enhancement

U.S.S.G. section 2B3.1(b)(4) provides: "(A) If any person was abducted to facilitate escape, increase by 4 levels; or (B) if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels." Application note 1(a) to U.S.S.G. section 1B1.1 states that " 'abducted' means that a victim was forced to accompany an offender to a different location."

The sole evidence offered supporting the allegation that Jordan abducted Howard was Howard's statement to police that was incorporated in the PSR. Although the government concedes that Howard's polygraph results [7] are "troubling"—particularly whether she knew Jordan before the alleged abduction—the government maintains that the evidence of abduction is nevertheless reliable because the questions

---

7. The admission of unstipulated polygraph evidence at sentencing is left to the "sound discretion of the trial court...." *United States v. Cordoba,* 104 F.3d 225, 227–28 (9th Cir.1997). Neither Jordan nor the government contends that the district court abused its discretion in admitting the polygraph report at sentencing.

whether Howard knew Jordan and whether Howard was abducted are not the same.

Whether Howard knew Jordan before the alleged abduction is important because "abducted," within the meaning of the Sentencing Guidelines, means that the victim was *forced* to accompany the offender to a different location. *See* U.S.S.G. § 1B1.1, app. n. 1(a). If Howard knew Jordan, as the polygraph results leave open, this would cast doubt on whether she was "forced" to leave with Jordan. Because Howard's statement was the only evidence submitted to support the abduction enhancement—and was not given under oath or subject to cross-examination—Howard's credibility is essential. *See Huckins,* 53 F.3d at 279 (holding that accomplice's statement that was not made under oath or at trial subject to cross-examination was not "inherently reliable.").

The logic of *Mezas de Jesus* is persuasive. There, the defendant challenged the sufficiency of the evidence supporting a kidnapping enhancement where the district court relied upon the statement of an unreliable victim, which was contained in the police report and incorporated in the PSR without an evidentiary hearing subject to cross-examination. We held that the district court erroneously relied on the PSR and erred in finding that the government had established the uncharged kidnapping by a preponderance of the evidence. *Mezas de Jesus,* 217 F.3d at 643–44.

In light of our conclusion that the two disputed enhancements, yielding prolonged imprisonment, required proof by clear and convincing evidence, this is a case that appears to call for an evidentiary hearing so that the credibility of the witnesses, and particularly Howard, may be fairly tested by Jordan's cross-examination. We have concluded that the record does not show overwhelming evidence in support of the firearm and abduction enhancements, both of which rest significantly on Howard's unsworn version of events presented out of court. While our circuit law has not been the model of clarity on this issue, we have no doubt here that the district court did not apply the correct burden of proof. This error seriously affects the fairness and integrity of Jordan's sentence.

We hold that the district court plainly erred at sentencing by making factual findings underlying sentence enhancements with disproportionate impact, where these findings were not supported by clear and convincing evidence. We remand to the district court to determine whether the evidence is clear and convincing that Jordan possessed a firearm during the bank robbery and whether he abducted Howard to facilitate his escape. As we are not in a position to weigh conflicting evidence, which is an important responsibility of the district court, we state no opinion on what the district court's determination should be under this heightened standard of proof. *Munoz,* 233 F.3d at 1127 (remanding to district court to determine whether evidence is clear and convincing to support "uncharged conduct upon which the upward adjustments were based," but stating "no opinion on what the district court's determination should be under this heightened standard of proof.").

## II.

Relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Jordan also contends that the firearm and abduction enhancements amounted to uncharged criminal conduct that should have been pled and proved beyond a reasonable doubt. This argument is without merit.

In *Apprendi,* the Supreme Court held that "[o]ther than the fact of a prior con-

viction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63 (emphasis added). The flaw in Jordan's argument is that the district court did not increase his penalty beyond the statutory maximum. *See* 18 U.S.C. § 2113(a) (providing for a twenty-year maximum sentence).

Jordan argues that with the enactment of the U.S.S.G., the terms of 18 U.S.C. § 3553 necessarily restricted the district court from selecting a sentence as high as the statutory maximum. We have previously rejected this precise argument:

> The dissent argues that the maximum penalty available is no longer the statutory maximum under the Guidelines because a judge no longer has discretion to sentence up to the statutory maximum if the Guideline sentence, properly acquired, falls below that maximum. We agree that the discretion to sentence above the guideline range is limited. However, we disagree that the limitation of discretion alters "the maximum penalty available for the crime committed" in any way that the Supreme Court would recognize as important for the constitutionally required standard of proof at sentencing.

*Restrepo,* 946 F.2d at 657 n. 4.

■ We reject Jordan's contention that the firearm and abduction enhancements should have been pled and proved beyond a reasonable doubt.

## CONCLUSION

We vacate Jordan's sentence and remand to the district court for further proceedings consistent with our opinion and for resentencing.

**VACATED,** and **REMANDED.**

O'SCANNLAIN, Circuit Judge, concurring:

I concur in the result and in most of the opinion of the Court. I write separately to explain why, reluctantly, I believe that under our most recent precedents we should hold that it was plain error not to apply the "clear and convincing" standard of proof to the sentence enhancements in this case. I do so without regard to *United States v. Valensia,* 222 F.3d 1173 (9th Cir. 2000), *cert. granted, judgment vacated, and remanded by* — U.S. ——, 121 S.Ct. 1222, 149 L.Ed.2d 133 (2001), which no longer has precedential effect, notwithstanding some interesting analysis in that now-vacated case relied upon in the Court's opinion.

The sentence enhancements in this case totaled nine levels and increased the applicable sentencing range by more than double. Under our precedents of the last two years, this degree of enhancement is sufficient to constitute an "extremely disproportionate effect" on the sentence and to require the "clear and convincing" standard of proof. *United States v. Restrepo,* 946 F.2d 654, 659 (9th Cir.1991) (en banc). These recent precedents begin with *United States v. Hopper,* 177 F.3d 824 (9th Cir.1999), wherein we held that a seven-level enhancement which more than doubled the applicable sentencing range required the higher standard of proof. *Id.* at 833. Since *Hopper,* we appear to have consistently held that when the enhancement is greater than four levels and more than doubles the applicable sentencing range, then the enhancements must be proved under the "clear and convincing" standard of proof. *Compare United States v. Munoz,* 233 F.3d 1117, 1127 (9th Cir. 2000) (requiring "clear and convincing" standard of proof for a nine-level enhancement which more than doubled the applicable range) *and United States v. Mezas de*

*Jesus,* 217 F.3d 638, 643 (9th Cir.2000) (same) *with United States v. Johansson,* 249 F.3d 848, 2001 WL 468413, at *6–*7 (9th Cir. May 4, 2001) (affirming "preponderance" standard for a four-level enhancement which did not more than double the applicable range) *and United States v. Herrera–Rojas,* 243 F.3d 1139, 1143–44 (9th Cir.2001) (affirming "preponderance" standard for a three-level enhancement which did not more than double the applicable range).

It is important to note, however, the curious evolution that brings us to this state of our law on standard of proof. In cases prior to *Hopper,* we held that the "preponderance" standard of proof was perfectly appropriate even though the enhancement was much greater than four levels and the applicable sentencing range was increased by well more than double. *United States v. Sanchez,* 967 F.2d 1383, 1384, 1385–87 (9th Cir.1992) (affirming "preponderance" standard where enhancement was 14 levels and range increased from 10–16 months to 63–78 months); *United States v. Harrison–Philpot,* 978 F.2d 1520, 1522, 1523–24 (9th Cir.1992) (remanding for "preponderance" standard where enhancement was 18 levels and range increased from 41–51 months to 292–365 months). *Hopper,* decided in 1999, did not attempt to distinguish these 1992–filed cases, and, indeed, did not even bother to cite them. It was for this reason that, soon after *Hopper* was decided, we noted that *Hopper* created "uncertainty in this circuit as to when the higher burden of proof applies." *United States v. Romero–Rendon,* 220 F.3d 1159, 1161 (9th Cir. 2000).

Nonetheless, as noted above, it appears as though any uncertainty created by *Hopper* has been moderated because four of our subsequent cases over the last two years have consistently adhered to its standard of proof formula. Although the change brought about by *Hopper* was accomplished, most remarkably, without benefit of en banc rehearing or decision by the Court en banc, indeed accomplished *sub silentio,* the change has been sufficiently persistent to make any deviation therefrom not only error, but plain error. While I do not approve of the path we have taken to get to this state of the law, I reluctantly concur in the judgment of the Court.